UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE KEIGLEY, | Case No. 1:20-cv-00360-HBK |
| Plaintiff, | OPINION AND ORDER AFFIRMING THE COMMISSIONER [2] |
| v. | (Doc. No. 17) |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Stephanie Keigley ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17-18). For the reasons stated, the Court affirms the Commissioner's decision.

## I.    JURISDICTION

Plaintiff protectively filed for supplemental security income on June 14, 2016, alleging an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 16).

onset date of November 1, 2009.  (AR 195-201).  Benefits were denied initially (AR 115-21) and upon reconsideration (AR 125-31).  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on December 17, 2018.  (AR 49-77).  Plaintiff testified at the hearing and was represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 27-47) and the Appeals Council denied review (AR 8-13).  The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 47 years old at the time of the hearing.  (AR 54).  She graduated from high school.  (AR 55).  Plaintiff lives with her spouse.  (AR 55).  She has work history as a cashier and dry-cleaning plant manager.  (AR 56, 69).  Plaintiff testified that she stopped working at her cashier job because she was robbed while working the graveyard shift and "they wouldn't take her off graveyard, so [she] quit," and she doesn't remember why she did not look for work after she quit that job.  (AR 56, 61).  She reported that she can walk for 10 minutes without stopping, stand for 15 to 20 minutes, can sit as long as she can "readjust" herself, and can lift and carry up to 10 pounds.  (AR 59).  She spends an hour to an hour and a half standing or walking on an average day, has constant pain in her lower back and right leg, and has lost strength in her hands.  (AR 62-66).  Plaintiff testified that she is unable to work full-time because she has constant pain in her shoulders, her "range of motion is completely gone," she has difficulty picking up things with her dominant right hand, her sciatica affects her walking and standing, and she has difficulty concentrating.  (AR 60).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five. At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.

20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 14, 2016, the application date. (AR 32). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical spine degenerative disc disease with stenosis C5-C6, status post cervical fusions C7, lumbar spine degenerative disc disease, and bilateral carpal tunnel syndrome. (AR 32). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 35). The ALJ then found that Plaintiff has the RFC to

> perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry a maximum of ten pounds. She can stand and/or walk for four hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She can occasionally reach bilaterally above the shoulder level and above the head. She can frequently handle and finger. She must avoid concentrated exposure to unprotected heights.

(AR 36). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 40). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including order clerk, retail accountant clerk, and call out operator. (AR 41-42). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 14, 2016, the date the application was filed. (AR 42).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1).

Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered Plaintiff's symptom claims.[3]  (Doc. No. 17 at 6-13).

## VII.  DISCUSSION

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

---

[3] On September 8, 2021, eight months after Defendant submitted their opposition to Plaintiff's opening brief, Plaintiff filed a "notice of new authority" to the Court. (Doc. No. 19).  This less than one-page "notice" identifies several Supreme Court cases as "new precedential authority" but fails to provide any further argument as to how the cited legal authority is applicable to Plaintiff's claim that the Commissioner erred in denying her supplemental security income benefits.  As Plaintiff has failed to offer any argument in her opening brief as to why the cited case law provides a basis for this Court to remand this case, she has waived her opportunity to raise this issue. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  To the extent this issue has been raised, the undersigned notes the consistent holdings of district courts in the Ninth Circuit who have refused to set aside unfavorable disability benefits decisions based on the statutory restriction on removal of a Social Security Commissioner.  *See, e.g., White v. Comm'r of Soc. Sec.*, No. 2:20-cv-1695-KJN, 2022 WL 463318, at *7 (E.D. Cal. Feb. 15, 2022); *Ramos v. Comm'r of Soc. Sec.*, No. 1:20-CV-01606-EPG, 2022 WL 105108, at *2 (E.D. Cal Jan. 11, 2022) (collecting cases); *Rivera-Herrera v. Kijakazi*, No. 1:20-CV-01326-GSA, 2021 WL 5450230, at *8 (E.D. Cal Nov. 22, 2021); *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F.Supp. 3d. ____, 2021 WL 5177363, at *8 (W.D. Wash. Nov. 8, 2021).

1  credibility determination with findings sufficiently specific to permit the court to conclude that
2  the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing
3  [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*
4  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278
5  F.3d 920, 924 (9th Cir. 2002)).

6  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably
7  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning
8  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with
9  the medical evidence and other evidence in the record" for several reasons. (AR 37). First, the
10 ALJ found that Plaintiff's statements about her symptoms are not entirely supported by the
11 objective medical evidence, and the "record supports a finding that [Plaintiff] is limited to a less
12 than sedentary range of exertion with the nonexertional limitation described [in the assessed
13 RFC]." (AR 37-38). Plaintiff correctly notes that an ALJ may not discredit a claimant's pain
14 testimony and deny benefits solely because the degree of pain alleged is not supported by
15 objective medical evidence. (Doc. No. 17 at 9) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346-47
16 (9th Cir. 1991)); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Fair v. Bowen*,
17 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in
18 determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857;
19 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in
20 discrediting a claimant's testimony, although it may not be the only factor. *See Burch v.*
21 *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

22 As an initial matter, the ALJ notes that "[a]lthough [Plaintiff] alleged an onset date at the
23 time she stopped working [in 2009], the earliest available medical [evidence] in April 2015 shows
24 [Plaintiff] did not have recurring neck pain and radicular symptoms until two to three years
25 prior." (AR 37, 350, 386; *see also* AR 224 (Plaintiff reporting that she stopped working because
26 her store was robbed, and she "believes" her condition became severe enough to keep her from
27 working in March 2011). The ALJ then went on to discuss the evidence regarding Plaintiff's
28 physical condition in detail. (AR 37-39). For example, as to her claimed cervical spine

impairment, the ALJ cited April 2015 MRI findings of degenerative canal stenosis associated with "mild to moderate" cord compression at C3-C4, degenerative changes and bilateral foraminal stenosis at C4-C5 and C7-T1; and an EMG showed mild to chronic bilateral C5 and right C6 radiculopathy.  (AR 37 (citing AR 350-51)).  MRI findings in June 2017 similarly showed degenerative changes at C3-C4 resulting in moderate canal stenosis, degenerative canal stenosis and foraminal stenosis at C4-C5, and degenerative stenosis at C7-T1.  (AR 38 (citing Tr. 703)).  As discussed further *infra*, surgery was planned but cancelled due to an infection and "medical records since then show little to no further treatment regarding [Plaintiff's] cervical spine disorder."  (AR 38, 546-72 (treated for ankle pain and cellulitis), 691, 704-08).  Moreover, physical examination findings from across the longitudinal record include overall normal tone and bulk, full strength, normal sensation, normal coordination, intact reflexes, mild pain with range of motion, and strong flexion and extension of the neck with no point tenderness.  (AR 37-39, 387, 390, 428, 454, 490, 520, 548, 576, 650, 692, 694-95).

Further, as to her claimed back impairment, the ALJ noted that examination progress notes "consistently documented" normal gait, negative Romberg's sign, normal tone and bulk, symmetric and full strength, intact coordination, and intact sensation, good neurovascular distal, negative straight leg raise test, no spinal or paraspinal tenderness, and full range of motion of bilateral legs.  (AR 38-39, 351, 354, 377, 379, 390, 408-09, 415, 428, 490, 548, 576, 695).  The ALJ also cited radiographic findings of only "very mild" degenerative changes in Plaintiff's right hip; and a November 2018 MRI of Plaintiff's lumbar spine indicated mild degenerative changes, mild to moderate right foraminal stenosis, and no evidence of significant disc or facet abnormality, spinal stenosis, or foraminal stenosis at L1-L2, L2-L3, and L3-L4.  (AR 37-38, 438, 707).  Finally, as to her claimed manipulative deficits due to carpal tunnel syndrome, an EMG test in 2015 showed "mild to moderate bilateral median entrapment neuropathy across both wrists," and April 2017 dynamometer results showed right hand strength at forty-five pounds and left hand strength at sixty pounds.  (AR 39, 351, 357, 672).  Physical examination findings showed intact sensation, reflexes and coordination; full grip strength; ability to quickly oppose her fingertips to thumbs; no gross deficits; and findings of both four out of five strength in her hands,

1  and five out of five strength in her upper extremities during the relevant adjudicatory period.  (AR
2  39, 351 407, 548, 692).

3        Plaintiff generally notes that the "regulations specifically prohibit rejecting subjective pain
4  testimony solely on the basis of objective evidence," but she does not specifically challenge the
5  ALJ's findings or identify objective evidence in the record that would tend to support her
6  disability claim.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.
7  2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).
8  Moreover, regardless of evidence that could be considered more favorable to Plaintiff, it was
9  reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with
10 objective findings from the longitudinal record.  (AR 37-39).  "[W]here evidence is susceptible to
11 more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."
12 *Burch*, 400 F.3d at 679.  This was a clear and convincing reason, supported by substantial
13 evidence, to discount Plaintiff's symptom claims.

14       Next, Plaintiff contends that the scheduling of cervical neck surgery, standing alone,
15 which was "delayed for unrelated infections," "supports her credibility in that her pain is so
16 significant she has sought out and underwent non-conservative modes of treatment."  (Doc. No.
17 17 at 10) (citing *Diaz v. Berryhill*, No. 18-CV-1888, 2018 WL 4998120, at *6 (C.D. Cal. Oct. 15,
18 2018)(collecting cases rejecting ALJs' rejecting of symptom claims based on conservative
19 treatment when claimant had undergone surgery)).  However, while not identified or challenged
20 by Plaintiff, the ALJ also noted "limited and sparse evidence" of treatment for Plaintiff's claimed
21 cervical impairment between September 2015 and April 2017; and "little to no further treatment
22 regarding [Plaintiff's] cervical spine disorder" after her September 2017 surgery was cancelled
23 due to safety concerns of an underlying infection.  (AR 38, 426 (cellulitis treatment), 441-572
24 (treatment for cellulitis and ankle pain), 645 (treatment for pain and swelling in thigh)).
25 Similarly, the ALJ cited treatment notes from 2015 indicating that although providers
26 "contemplated and scheduled" Plaintiff for surgery at a previous time, it was "noted that
27 [Plaintiff] did not follow through or show up"; and Plaintiff did not undergo carpal tunnel release.
28 (AR 37-39, 352 (suggesting carpal tunnel surgery), 389 (noting delayed surgery for personal

reasons), 398 (noting patient was a no show to pre-operative appointment), 406 (noting Plaintiff was "offered" carpal tunnel release), 695, 705 (cancelled post-operative appointment), 672 (physical therapist noting Plaintiff's "gains are not what was expected and reflect her commitment to PT treatment"). Plaintiff largely fails to address these findings by the ALJ in her opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Moreover, unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Plaintiff's failure to seek and comply with treatment, without good reasons asserted for that failure, was a clear and convincing reason, supported by substantial evidence, for the ALJ to discredit Plaintiff's symptom claims.

Finally, Plaintiff argues that her "sporadic activities as described in her testimony and summarized by the ALJ do not contradict her testimony nor do they demonstrate an ability to spend a substantial part of the day doing activities transferable to a work setting." (Doc. No. 17 at 11). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this finding, the ALJ cites evidence throughout the decision of Plaintiff's ability to perform a range of daily activities, including cook for herself, attend to hygiene independently, shop for groceries, go out alone, and do "some walking and gardening for exercise." (AR 61-62, 260 (reporting that she helps manage mother's financial affairs and feeds animals), 407 (reporting that she performs her own activities of daily living without assistance), 415 (reporting she "has some difficulty completing household tasks because of lack of motivation and energy")). The ALJ also specifically noted that Plaintiff testified she is able to use a computer and a cell phone despite claiming significant manipulative deficits. (AR 39, 58)*.*

Plaintiff generally argues that the fact that Plaintiff "can do some activities but does them infrequently or with numerous breaks does not conflict with her testimony that she is unable to work," and Plaintiff's "descriptions of her activity level are far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." (Doc. No. 17 at 12). Regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find that Plaintiff's documented activities, including her own reports in the record that she gardened, walked for exercise, and was capable of activities of daily living without assistance, was inconsistent with her allegations of entirely debilitating functional limitations. *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). Moreover, even assuming, *arguendo*, that the ALJ erred in making this finding, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED** for the reasons set forth above.

2. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated: __March 23, 2022__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE